On Rehearing.
 

 O’NIELL, C. J.
 

 We have concluded that, the district judge’s reduction of the bank’s crop pledge of $20,000, dated May 26, 1920, to $17,162.34, was correct. There should not be a further reduction of $829 for the two cheeks that were drawn by the Spiller Sugar Company on the day on which the loan of $20,000 was placed to its credit by the bank. The pledge was granted under the provisions of the Act No. 66 of 1874, which allows a crop to be pledged to secure a loan of money for the cultivation of the crop, as well as to secure the payment of the price of goods or supplies furnished therefor. The holder of a crop pledge, given under the provisions of the Act No. 66 of 1874, to secure the payment of money loaned or advanced to pay for labor and necessary supplies for the cultivation of the crop, is not required to see that the money is actually expended for such purposes, to preserve his lien on the erop.
 

 The record discloses that the bank received and should account for the proceeds of the sales of the sugar and molasses produced by the Spiller Sugar Company on the Eureka plantation, amounting to $29,577.96. being $25,377.61 received from J. C. Murphy & Sons and $4,200.35 received from S. M. Levy.
 

 ' From the total of $29,577.96 should be deducted $2,896.08 for the product, of cane raised on the Greenwood plantation, on which neither the bank nor the American Cotton Oil Company had a lien. The cotton oil company, therefore, cannot complain’ of the bank’s applying the $2,896.08 to the partial payment of the unsecured note of $12,000 due by the Spiller Sugar Company.
 

 The balance which the bank must ac- - count for is $26,681.88; from which should be deducted the following items, viz.:
 

 (1) Refund to S. M. Levy, on price of sugar $1,111 51
 

 (2) Proceeds of molasses used on plantation 1,757 60
 

 (3) Insurance and freight.................... 507 15
 

 (4) Molasses barrels bought.................. 1,510 00
 

 (5) Salary of overseer and of sugar boiler..
 
 1,14152
 

 (6) Sundry plantation supplies.............. 615 66
 

 $6,643 44
 

 Deducting this total of $6,643.44 from the $26,681.88, leaves a balance of $20,038.44 for distribution.
 

 The American Cotton Oil Company does not complain of the allowance of the items (1), (2) and (5), amounting to $4,010.63, but complains of the allowance of items (3), (4) and
 
 *459
 
 (6). We adhere to the opinion that these items were properly allowed, because the bank was compelled to pay for the insurance and freight on the sugar and molasses shipped, and for the barrels and other plantation supplies.
 

 In the distribution of the balance of $20,-038.44 held by the bank, the district judge ranked the claims of the cotton oil company and of the bank, respectively, according to the provisions of the Act 89 of 1886, as follows:
 

 (1) Plaintiff’s pledge recorded Marcli 6, 1920 $ 1,405 00
 

 (2) Plaintiff’s pledge recorded May 20, 1920.. 1,053 75
 

 (3) Bank's pledge recorded May 27, 1920.... 17,162 34
 

 (4) Plaintiff’s pledge recorded June 2, 1920.. 1,053 75
 

 $20,674 84
 

 On the cotton oil company’s pledges, being items (1), (2) and (4), the district judge allowed interest at 6 per cent, per annum, on $1,405 from April 5, 1920, on $1,053.75 from June 14, 1920, and on $1,053.75 from June 25, 1920; all of which we affirm. On the balance of $17,162.34 due on the bank’s pledge for $20,000, dated May 26,1920, the district judge allowed interest at 8 per cent, per annum from December 20, 1920. At first we were of the opinion that that allowance was just and correct, but we find it not so, because the bank was reimbursed all that was due on its pledge early in 1921 and has held a large sum due to the cotton oil company ever since. We find that, by crediting the bank with interest at 8 per cent, on its balance due to the date of each partial payment received from J. O. Murphy & Sons, in 1921, and charging the bank with each payment, the payment of $883.71, on March 28, 1921, left a balance of only $4,256.78 due the bank; which was virtually wiped out by the payment of $4,200.35 received from S. M. Levy, leaving a balance of only $56.43 due the bank. Thereafter, in 1921, the bank received in remittances from J. O. Murphy & Sons $12,136.10, leaving an excess of $12,079.67 after extinguishing the bank’s pledge. From, that excess should be deducted the product of the cane raised on Greenwood plantation, amounting to $2,896.08 and credited on the Spiller Company’s note of $12,000, leaving an excess of only $9,183.59, from which should be deducted the expenditures listed above, amounting to $6,643.44, leaving $2,540.15 to apply on the pledges in favor of the plaintiff, cotton oil company. The bank must therefore pay to the plaintiff, cotton oil company, the $1,405 secured by its first pledge, and interest thereon at 6 per cent, per annum from April 5,1920, until paid, and the $1,053.75 secured by the cotton oil company’s second pledge, and interest thereon at 6 per cent, per annum from June 14, 1920, until paid, and $81.40 on the $1,053.75 secured by the cotton oil company’s third pledge, and interest on the $81.40 at 6 per cent, per annum from June 25, 1920, until paid.
 

 ■ The cotton oil company complains particularly of the allowance of the deduction of $2,896.08, for the product of the cane raised on Greenwood plantation, and contends that the deduction should be only $929.50. Greenwood sold to the Spiller Company 484 tons of cane, the price of which amounted to $2,-$96.08, of which $1,966.58 was offset or compensated by a debt due by Greenwood to the Spiller Company, and the balance, $929.50, was credited to Greenwood’s account in the Bank of White Castle. It is true, therefore, that, of the total sum of $29,577.96 received by the bank, as the proceeds of the sales of sugar and molasses made by the Spiller Company, the bank paid to Greenwood only $929.-50; but that does not affect the truth of the statement that, of the $29,577.96 received by the bank, $2,896.08 was the, product of the cane which was bought from Greenwood, and on which neither the cotton oil company nor the bank had a lien. The bank got the benefit of the $1,966.58 which the Spiller Company, because of the debt due by Greenwood, did not have to pay him in cash, and which the bank, therefore, had the right to apply on the
 
 *461
 
 unsecured note of $12,000, due by the Spiller Company to the bank. If Greenwood had owed the Spiller Company all of the $2,896.08, for which he sold his cane, and if, therefore, the bank had not paid Greenwood anything, there would have been in the bank, none the less, $2,896.08 which the cotton oil company would have had no lien on. Our conclusion is that the judgment appealed from is correct in that respect.
 

 The judgment appealed from is amended by condemning the defendant Bank of White Castle to pay to the plaintiff, American Cotton Oil Company, out of the proceeds received by the bank 'from the sales of the sugar and molasses produced on the Spiller Sugar Company’s Eureka plantation in 1920, the sum of $2,540.15, together with interest at 6 per cent, per annum, on $1,405 from the 5th of April, 1920, on $1,053.75 from the 14th of June, 1920, and on $81.40 .from the 25th of June, 1920, all in full payment of the first and second crop pledge and in payment of $81.40 on the third crop pledge held by the plaintiff, cotton pil company. As thus amended, the judgment appealed from is affirmed at the cost of the defendants Spiller Sugar Company and Bank of White Castle.